IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MELVIN GRAYER                                                                                           PLAINTIFF

VS.                                                                              CIVIL ACTION NO. 3:12cv660-FKB

GEO CORPORATE OFFICE
GROUP, et al.                                                                                        DEFENDANTS

<u>MEMORANDUM OPINION</u>

Plaintiff, a state prisoner, brought this action pursuant to 42 U.S.C. § 1983 alleging inadequate medical care by prison officials.  Specifically, he claims that medical personnel at Central Mississippi Medical Facility (CMCF) and East Mississippi Correctional Facility (EMCF) failed to provide prompt and adequate treatment for a shoulder injury.  Having considered Plaintiff's testimony at the omnibus hearing, having conferred with defense counsel, and having reviewed Plaintiff's medical records submitted at the hearing, the Court concludes that this matter should be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(I).

In 2011, while incarcerated in the Harrison County Adult Detention Center, Plaintiff sustained a shoulder injury and was diagnosed with a left ac joint separation.  Plaintiff came into MDOC custody in February of 2012 and was housed at EMCF.  Shortly thereafter, he was transferred temporarily to CMCF for medical evaluation and treatment.  On March 8, 2012, while at CMCF, he fell from a top bunk, further injuring his left shoulder.  Over the next four weeks, he was seen and treated by nurses, a physician, and a nurse practitioner at CMCF.  An x-ray taken during this period revealed only mild degenerative changes with bone spurring.  Plaintiff underwent an MRI of his left shoulder

on or about April 16, 2012.  However, because of his return to EMCF shortly thereafter, the results of the MRI were misplaced and were not recorded in his institutional medical file.

Plaintiff returned to EMCF in mid-April of 2012.  The record indicates that he was seen by a nurse and given Naproxen on May 9, 2012.  The next recorded treatment was on July 1, 2012, when he was treated for minor injuries after a fall.   Thereafter, there is no indication of any medical treatment until September 9, 2012, when he again saw a nurse for shoulder pain.  Plaintiff alleges that upon his return to EMCF he made numerous written requests for medical treatment but that these were ignored.  However, the medical records reflect only two requests:  One dated May 9, which resulted in evaluation by the nurse the same day, and one dated August 27, which resulted in a visit to the nurse on September 4 at which the nurse prescribed Aleve for pain and referred him to the pain clinic. On October 16, 2012, Plaintiff finally saw a physician, Dr. Faulks, for his complaints of shoulder pain.  Dr. Faulks administered a shoulder injection and prescribed medication.  Notes from this visit state that Plaintiff was to be scheduled for evaluation by an orthopedic surgeon and for physical therapy.  Dr. Faulks evaluated Plaintiff again on October 25, 2012.   On November 21, 2012, Dr. Faulks attempted to examine him for followup but was unable to do so because Plaintiff was exhibiting aggressive and unpredictable behavior.  Dr. Faulks saw him again on November 29, 2012, at which time Plaintiff had still not been referred to an orthopedic surgeon or for physical therapy.  Dr. Faulks's notes indicate that this delay was the result of attempts to obtain the reports from Plaintiff's MRI.  Plaintiff was finally seen by an orthopedic surgeon, Dr. O'Keeffe, on December 5, 2012.  Dr. O'Keeffe diagnosed him with biceps tendinitis and significant

adhesive capsulitis.  He administered steroid injections and prescribed physical therapy.

The primary focus of Plaintiff's complaint is the delay he experienced in obtaining treatment, especially in being seen by a specialist, after his return to EMCF on April 16, 2012.  Plaintiff complains that although he made repeated sick call requests from this date forward, he did not see an orthopedic surgeon until December 5, 2012.   He also alleges that his nurses and physicians did not properly evaluate him and treat him for his complaints and that he continues to suffer pain and discomfort.

Where the wrong complained of is a denial of medical treatment, a prisoner must allege deliberate indifference to serious medical needs.  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *see also Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  To establish deliberate indifference, a prisoner must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 725, 756 (5th Cir. 2001).   Plaintiff has failed to meet this standard.   Plaintiff's allegations and his medical records suggest that there may have been some carelessness and a failure to respond to his complaints in a prompt manner.  But the Constitution does not require the best or the most efficient medical care.  Plaintiff has failed to allege, and his medical records do not support a finding, that any particular individual or individuals intentionally delayed treatment or otherwise wantonly disregarded any serious medical need.  Furthermore, Plaintiff's dissatisfaction and disagreement with his treatment does not give rise to a constitutional claim.  *See Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997).

Because Plaintiff's claims have no arguable basis in law or fact, they will be

dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).  *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).  A separate order of dismissal will be entered.

SO ORDERED this the 11th day of September, 2013.

/s/ F. Keith Ball

_____
UNITED STATES MAGISTRATE JUDGE